

**IT IS ORDERED as set forth below:**

**Date: September 30, 2021**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | | |
|---|---|---|
| In re: | : | CASE NO. **19-12387-PMB** |
| | : | |
| **DEE BENSON DIGET and** | : | |
| **DAVID KENNETH DIGET, II** | : | CHAPTER 7 |
| | : | |
| Debtors. | : | |
| | : | |
| | : | |
| **DIANA MAY-DIGET DUBBELD,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | ADVERSARY PROCEEDING |
| v. | : | |
| | : | NO. **20-1042-PMB** |
| **DEE BENSON DIGET,** | : | |
| | : | |
| Defendant. | : | |

## <u>ORDER GRANTING IN PART AND</u>
## <u>DENYING IN PART DEFENDANT'S MOTION TO DISMISS</u>

The above-captioned matter (the "<u>Adversary Proceeding</u>") comes before the Court on

*Defendant's Amended Motion to Dismiss* (the "<u>Motion</u>") filed by the above-referenced

Debtor/Defendant (the "<u>Defendant</u>") on March 3, 2021 (Docket No. 18) and her related *Brief in*

*Support of Defendant's Amended Motion to Dismiss* (Docket No. 19)(the "Brief"; collectively, with the Motion, the "Motion to Dismiss").[1]  The Adversary Proceeding was commenced on December 15, 2020 by the above-captioned Plaintiff's (the "Plaintiff") filing of a *Complaint to Determine Dischargeability of Debts* (Docket No. 1)(the "Original Complaint"),[2] which was amended by the Plaintiff on February 4, 2021 via an *Amended Complaint to Determine Dischargeability of Debts* (Docket No. 11)(the "Amended Complaint").[3]  In the Motion to Dismiss, the Defendant seeks the dismissal of this Adversary Proceeding and all Counts asserted in the Amended Complaint.[4]  For the reasons described below, this Order will only address the request to dismiss Counts IV and V of the Amended Complaint at this time.

## I.    PROCEDURAL HISTORY AND POSTURE

The underlying joint Chapter 7 bankruptcy case, Case No. 19-12387 (the "Main Case"), was filed on November 26, 2019.  In her original schedules, the Defendant listed the Plaintiff as a contingent unsecured creditor under a guaranty in the amount of $440,000.00 (Docket No. 11, Sch. E/F, p. 14), listing Foundation Ambulance, Inc. ("Foundation") as a codebtor (Docket No. 11, Sch. H, p. 2).  She also listed the Plaintiff as a codebtor on obligations to "CenterState Bank" (Docket No. 11, Sch. H, p.1).

---

[1] The Defendant's argument is in the Brief.  As a result, page references to the Motion to Dismiss in this Order are to the Brief and not to the Motion.

[2] The Original Complaint only contained what are now Counts IV and V of the Amended Complaint.  Counts I-III were added in the Amended Complaint.

[3] Amendment to the Original Complaint was permitted by the Court pursuant to a *Consent Order Accepting Filing of Amended Complaint* (Docket No. 21).

[4] No answer has been filed to the Original Complaint or the Amended Complaint.  The time to file same is extended pursuant to Federal Rule of Bankruptcy Procedure 7012(b) by the filing of the First Motion to Dismiss and the Motion to Dismiss.

The original deadline for filing a complaint to determine the dischargeability of debts in the Main Case was March 10, 2020 (Main Case, Docket No. 3).  That deadline was extended as to the Plaintiff by consent orders four (4) times, with the final deadline being December 15, 2020 (Main Case, Docket No. 72).  On September 1, 2020, Griffin E. Howell III, the duly appointed trustee in the Main Case (the "Trustee"), indicated there may be assets to distribute and requested that the Court set a deadline for filing proofs of claim in the Main Case (Main Case, Docket No. 54).  On September 2, 2020, that deadline was set as December 1, 2020 (Main Case, Docket No. 55).  On December 1, 2020, the Plaintiff filed three (3) proofs of claim in the Main Case (Main Case, Claims Docket, Claims 22-24)(the "Proofs of Claim").  As noted above, the Original Complaint was filed on December 15, 2020.  On December 18, 2020, the Defendant amended her Schedules E/F in the Main Case to "remove [the Plaintiff] as a creditor" (Main Case, Docket No. 87).  No amendments were made to Schedule H at that time or since.

On January 5, 2021, the Defendant filed *Debtor's Objection to Proofs of Claim Nos. 22, 23 and 24 Filed by Diana Dubbeld* (Main Case, Docket No. 89)(the "Objection"), in which she objected to the Proofs of Claim.  On January 7, 2021, the Defendant filed *Defendant's Motion to Dismiss* (Docket No. 5)(the "First Motion to Dismiss").[5]  On February 4, 2021, the Plaintiff responded to the Objection by filing *Respondent's Response to Debtor's Objection to Proofs of Claim Nos. 22, 23 and 24* (Main Case, Docket No. 101)(the "Objection Response")[6] and to the

---

[5] In the First Motion to Dismiss, the Defendant sought to dismiss the Original Complaint solely because she asserted that the Plaintiff holds no claims against her.  This same document, including the same date of execution, was also filed on February 18, 2021 (Docket No. 16).  Like the First Motion to Dismiss, this document has been amended and superseded by the Motion to Dismiss.

[6] The Trustee also responded to the Objection in the *Trustee's Response to Debtor's Objection to Proofs of Claim Nos. 22, 23 and 24 Filed by Diana Dubbeld* (Docket No. 100)(the "Trustee's Objection Response").  In the Trustee's Objection Response, the Trustee asserts that Claim 22 should be denied because the Debtor is not an obligor on the Note, asserts that Claim 23 should be denied because it represents a contingent claim for contribution pursuant to 11 U.S.C. § 502, and requests that he be excused from addressing Claim 24 because of its complexity and the minimal assets in the estate.

First Motion to Dismiss by filing her *Response in Opposition to Defendant's Motion to Dismiss* (Docket No. 12)(the "Response to First Motion to Dismiss"), as well as the Amended Complaint. On February 12, 2021, the Court entered its *Order and Notice Scheduling Webex Evidentiary Hearing* (Main Case, Docket No. 104; Docket No. 13)(the "Order and Notice") setting the First Motion to Dismiss, the Response to First Motion to Dismiss, the Objection, and the Objection Response for a video evidentiary hearing on March 5, 2021.

On February 18, 2021, at the request of the Plaintiff and the Defendant, the Court held a telephonic status conference regarding these matters (the "February Status Conference"). Counsel for the Plaintiff, counsel for the Defendant, and the Chapter 7 Trustee appeared at the February Status Conference. At the conclusion of the February Status Conference the parties agreed that the Court should address Amended Complaint dischargeability Counts IV and V first.[7]

A second telephonic status conference regarding this matter was held on March 2, 2021 (the "March Status Conference"). Counsel for the Plaintiff, counsel for the Defendant, and the Chapter 7 Trustee appeared at the March Status Conference. At the March Status Conference, it was confirmed that the Court should first adjudicate nondischargeability Counts IV and V, that the parties could address these counts by a motion to dismiss or a motion for summary judgment, and that the scheduled video evidentiary hearing should be cancelled or postponed. The Chapter 7 Trustee indicated that he would not participate in the Adversary Proceeding until the Court had rendered a judgment on Counts IV and V, at which point the Chapter 7 Trustee would evaluate the nature of his future involvement in this case. At the conclusion of the March Status Conference, the Court established a timeline for the Defendant to file a motion to dismiss or motion for

---

[7] Counts IV and V are the only counts that address the dischargeability of the alleged claims of the Plaintiff against the Defendant.

summary judgment regarding the nondischargeability counts and a schedule for responses. A *Scheduling Order* (Docket No. 17)(the "Scheduling Order") was entered on March 2, 2021 to memorialize the filing deadlines discussed in the March Status Conference and to cancel the scheduled March 5, 2021 video evidentiary hearing.

Following the entry of the Scheduling Order, the Defendant filed the Motion to Dismiss on March 3, 2021.[8] On March 19, 2021, the Plaintiff filed a *Response in Opposition to Defendant's Amended Motion to Dismiss* (Docket No. 23)(the "Response"). Finally, on March 26, 2021 the Defendant filed a *Reply to Plaintiff's Response to Motion to Dismiss* (Docket No. 24)(the "Reply"). All pleadings and orders on the docket in this matter and the Main Case were considered in connection with this Order.

## II.    BACKGROUND

### a.    *Alleged Facts*

The Plaintiff alleges the following basic facts in the Amended Complaint. Many of them are not disputed by the Defendant. The Plaintiff is the Defendant's sister-in-law, as the Defendant is married to the Plaintiff's brother. (Amended Complaint, ¶ 10). The Defendant was at all relevant times the officer in charge[9] of Foundation and the sole member of its board of directors. (Id. at ¶¶ 3-4, 17). Foundation is presently a debtor in its own Chapter 7 bankruptcy case, Case No. 20-10165-PMB. (Id. at ¶ 2).

---

[8] The Defendant chose not to file a motion for summary judgment. The Motion to Dismiss addresses all five (5) Counts of the Amended Complaint, as do the Response and the Reply. In this Order, the Court only addresses Counts IV and V.

[9] There is some disagreement or confusion as to her precise title. In both the Amended Complaint and the Motion to Dismiss, the Defendant is referred to as "Chief Executive Officer." (Amended Complaint, ¶ 17). However, the Defendant signed Foundation's Petition as well as the various loan documents as "President." (Id., ¶¶ 28, 34 and Exhibits 2 & 4). The Defendant's precise title is not material to the resolution of the matters resolved by this Order.

In June of 2017, the Plaintiff acquired a 33 1/3 % ownership interest in Foundation in exchange for an investment of $500,000.00 (the "Equity Investment"),[10] with the Defendant retaining a 66 2/3 % ownership interest in Foundation.  (Id. at ¶¶ 15-16).  Following the Equity Investment, the Plaintiff made sporadic additional loans to fund the business.  (Id. at ¶¶ 20-21, 24-26).  On June 19, 2018, the Defendant executed a promissory note formally memorializing the loan obligation to the Plaintiff for these additional loans and setting forth repayment terms (the "Note").  The Note established a principal amount owed to the Plaintiff of $441,736.43, a nine percent (9%) annual interest rate, and increasing weekly payments with a maturity in 2023.  The Note was secured by the grant of a security interest in certain equipment owned by Foundation.[11]  (Id. at ¶¶ 26-27 and Exhibit 1).

The day after the Note was signed—on June 20, 2018—the Defendant sent an e-mail to the Plaintiff (the "June E-Mail").  The June E-Mail included as attachments the Note signed by the Defendant, a *Foundation Ambulance Inc. Balance Sheet May 2018*, and a *Foundation Ambulance Inc. Income Statement Year-to-Date Only, May 2018 – current month* (the latter two items, collectively, the "Financial Statements").  (Id., ¶ 28 and Exhibit 2).

On July 23, 2018, Foundation borrowed $568,000.00 (the "Bank Loans")[12] from First Landmark Bank (the "Bank").  For Foundation to obtain the Bank Loans, the Bank required that the Plaintiff subordinate her debt and security interest to the Bank Loans.  (Id., ¶¶ 31, 33 and Exhibit 3).  In connection with the Bank Loans, the Plaintiff and the Defendant each executed a

---

[10] The Equity Investment was made through the conversion to equity of previous loans made by the Plaintiff to the business, rather than by a contemporaneous cash contribution.  (Id. at ¶ 26).

[11] The Plaintiff does not allege in the Amended Complaint that this security interest was ever perfected by the filing of a UCC-1 financing statement.

[12] There were two (2) Bank Loans—one loan for $500,000.00 and a separate loan for $68,000.00.  (Id., ¶ 32).

guaranty agreement (each a "<u>Guaranty</u>", and collectively the "<u>Guaranties</u>"), in which the respective guarantors personally guaranteed the repayment of the Bank Loans,[13] and in which the Note was subordinated to the Bank Loans.[14]  The Bank was granted a first priority security interest in all of Foundation's assets in connection with the Bank Loans.  (Id., ¶ 40).  On August 23, 2019, Foundation entered into a *Change in Terms Agreement* (the "<u>Change Agreement</u>"), whereby the maturity date of the Bank Loans was extended.  (Id., ¶ 44).  The Plaintiff was not informed of this extension.  (Id., ¶ 45).

Despite the Change Agreement, Foundation defaulted on the Bank Loans.  (Id., ¶¶ 44, 46).  On December 24, 2019, CenterState Bank, N.A. ("<u>CenterState</u>"), the alleged successor in interest to the Bank regarding the Bank Loans,[15] filed a complaint against Foundation and the Plaintiff in the Superior Court of Cobb County, Georgia to collect on the Bank Loans and to enforce the Guaranty signed by the Plaintiff (the "<u>Superior Court Lawsuit</u>").  (Id., ¶ 47).  The Plaintiff has answered the Superior Court Lawsuit, and it remains pending.  (Id.).  The Plaintiff does not allege in the Amended Complaint that she has made any payments under her Guaranty or with regard to

---

[13] Id. The Plaintiff states in the Amended Complaint that she does not concede that she guaranteed the Bank Loans. (Id., ¶¶ 42 n.3, 47 n.4).

[14] Id., ¶¶ 41-42 and Exhibits 10 & 11.  There is a claim subordination set forth on Page 3 of the respective Guaranties. There is no express lien subordination, but a lien subordination may not have been needed since the Plaintiff does not allege in the Amended Complaint that her security interest was ever perfected.  The Plaintiff asserts that the subordination was required and was affected through the security agreements evidencing the Bank Loans.  (Id. ¶¶ 33, 40).  However, those documents do not actually subordinate her interest, nor do any other documents that were attached to the Amended Complaint.

[15] The Plaintiff also reserved her right to dispute this—along with any and all defenses—in the Amended Complaint. (Id., ¶¶ 42 n.3, 47 n.4).

the Bank Loans. CenterState filed a proof of claim on November 30, 2020, in the Debtor-Defendant's main case for approximately $550,000.00.[16]

### b. *Plaintiff's Allegations*

Based on the above-stated facts, the Plaintiff makes a series of allegations in the Amended Complaint regarding the conduct of the Defendant. The Plaintiff alleges that the Defendant sent the June E-Mail containing the Financial Statements so as to induce the Plaintiff to accept the terms of the Note and sign the documents for the Bank Loans, including the Guaranty which includes subordination language. (Id., ¶ 48). She further claims that the Financial Statements were created by the Defendant to be intentionally misleading and inaccurate. (Id., ¶¶ 54–75). In support of this claim, she references in the Amended Complaint significant differences in the stated value of Foundation's equipment, inventory, and accounts receivable as listed on the 2018 Financial Statements and the value of those same assets as scheduled in Foundation's 2020 bankruptcy (collectively, the "Valuation Discrepancies"). (Id.). The Plaintiff asserts that she would have not accepted the repayment terms in the Note, executed her Guaranty or subordinated her claims and interests but for the seriously misleading information contained in the Financial Statements.

The Plaintiff further asserts that the Defendant entered into the Change Agreement without the knowledge or authorization of the Plaintiff. (Id., ¶ 45). As a consequence of the Defendant's and Foundation's bankruptcy cases, the Plaintiff claims that she has become the lone party that CenterState is seeking repayment from in the Superior Court Lawsuit. (Id., ¶ 84).

Finally, in two (2) sub-sections of the Amended Complaint entitled *Additional Financial Misrepresentations* and *Actions to Harm Dubbeld as Creditor and Co-Guarantor*, the Plaintiff

---

[16] The Plaintiff asserts that the filed claim is Claim No. 18 in the amount of $555,496.96. (Id. ¶ 47). A review of the claims docket shows that CenterState's claim is Claim No. 21, and is in the amount of $549,551.38. The claim number and dollar amount cited in the Amended Complaint appear to be from the Foundation Chapter 7 case. These differences are not relevant to the resolution of this matter.

claims that the Defendant engaged in various other misdeeds that had the effect of harming the Plaintiff.  (Id., ¶¶ 79–97).  The alleged misdeeds are: Foundation ceasing payments to the Plaintiff on the Note in February of 2019 despite Foundation continuing to pay other creditors including the Defendant herself (Id., ¶¶ 29, 85); the Defendant regularly ignoring the Plaintiff's requests for monthly financial statements and giving the Plaintiff incomplete Foundation credit card statements (Id., ¶¶ 79–80); the Defendant using Foundation credit cards for personal expenses and paying the Defendant and the Defendant's husband disproportionately high salaries (Id., ¶¶ 81, 85); the Defendant failing to maintain adequate business records for Foundation and keeping an incomplete check register for Foundation (Id., ¶¶ 82–83); the Defendant liquidating Foundation's assets so as to make it impossible for Foundation to repay its creditors (Id., ¶¶ 86–90); and the Defendant creating a new company called Frontier Ambulance Solutions, LLC ("Frontier") so that the Defendant could shut down Foundation in name only and continue Foundation's business under the Frontier moniker (Id., ¶¶ 92–96)(all of the foregoing, the "Misdeeds").

In support of the Plaintiff's factual allegations, the Amended Complaint includes fourteen (14) attached exhibits.  These exhibits include copies of the Note, the June E-Mail, the *Commitment Letter* for both Bank Loans, the *Promissory Note* for both Bank Loans, the *Business Loan Agreement (Asset Based)* and *Business Loan Agreement* for the Bank Loans, the *Commercial Security Agreement* for both Bank Loans, the *Commercial Guaranty* regarding the Bank Loans, the Change Agreement, a *Foundation Ambulance, Inc. Balance Sheet August 2018*, and a *Foundation Ambulance, Inc. Balance Sheet June 2019*.  All of the aforementioned exhibits have been reviewed in connection with this Order.

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), made applicable herein through Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012(b), dismissal of a complaint is appropriate if the court lacks subject-matter jurisdiction over the claim.  The bankruptcy court's subject-matter jurisdiction is limited to any or all cases under Title 11 of the United States Code (the "Bankruptcy Code" or "Code") and any or all proceedings arising in or related to a case under the Bankruptcy Code.  28 U.S.C. § 157(a); 28 U.S.C. § 1334(b).  An action is sufficiently related to a bankruptcy case if the outcome, "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990)(emphasis added).

Under Rule 12(b)(6), also made applicable herein through Bankruptcy Rule 7012(b), dismissal of a complaint is appropriate if that complaint fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is interpreted though the lens of Rule 8(a), made applicable herein through Bankruptcy Rule 7008, which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  Under this standard, "to survive a motion to dismiss, a complaint must now contain factual allegations that are 'enough to raise a right to relief above the speculative level.'"[17]  Further, under Rule 9(b), fraud

---

[17] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *quoted in Berry v. Budget Rent A Car Systems, Inc.*, 497 F.Supp.2d 1361, 1364 (S.D. Fla. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

must be pled with particularity and, although malice and intent may be alleged generally, facts regarding the time, place, and content of any alleged misrepresentations must be offered.[18]

When considering a motion to dismiss, the inquiry is restricted to the legal feasibility of the allegations in the complaint and whether they set forth facts as opposed to labels or mere conclusory statements. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dismissal is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## IV.    DISCUSSION

In the Amended Complaint, the Plaintiff asserts the following counts against the Defendant: Count I for fraud in the inducement; Count II for breach of fiduciary duty; Count III for breach of duty of loyalty; Count IV for a determination of dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(B); and Count V for a determination of dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(6). In light of the discussion and determinations made at the February Status Conference and March Status Conference, this Order will only address Counts IV and V.

The Motion to Dismiss asks that the Court dismiss Counts IV and V based on Rules 12(b)(1) and 12(b)(6). For the reasons discussed below, the Motion to Dismiss will be granted in part and denied in part as to Count IV and granted as to Count V.

---

[18] *United States v. Baxter Intern., Inc.*, 345 F.3d 866, 883 (11th Cir. 2003); *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1370-71 (11th Cir. 1997).

### a. *Count IV*

In Count IV of the Amended Complaint, the Plaintiff seeks a determination that the Defendant's debt to the Plaintiff under the Note and the Defendant's co-guaranty of the Bank Loans are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).  Count IV asserts that the Defendant utilized the Financial Statements attached to the June E-Mail to induce the Plaintiff to agree to the repayment terms in the Note and to sign her Guaranty.  The Plaintiff—tracking the elements of Section 523(a)(2)(B)(i)–(iv) discussed *infra*—asserts that the Financial Statements were "(i) materially false; (ii) respected the financial condition of an insider, Foundation; (iii) on which Plaintiff reasonable relied; and (iv) that the Defendant caused to be made or published with the intent to deceive."  (Amended Complaint, ¶¶ 133–34).

In support of this claim, the Plaintiff argues in Count IV that the Valuation Discrepancies demonstrate that the Defendant knowingly furnished the Financial Statements with intentionally false information.  She further argues that the Defendant intended to have the Plaintiff read and reasonably rely on the false information in the Financial Statements when the Plaintiff contemplated signing the Note and her Guaranty.  Based on these allegations, the Plaintiff asks in Count IV that the Court render the Defendant's debt to the Plaintiff under the Note and the Guaranties nondischargeable.

### b. *Count V*

Similarly, in Count V of the Amended Complaint the Plaintiff seeks a determination that the Defendant's obligations to the Plaintiff are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).  More specifically, the Plaintiff requests the Court order (1) that the Defendant's debt to the Plaintiff with respect to the Note is due in full and is nondischargeable, (2) that the Defendant is liable in

full for the Bank Loans that the Plaintiff and the Defendant co-guaranteed, and (3) that the

Defendant is liable for the full amount paid for the Equity Investment.

To establish an entitlement to the aforementioned remedies, in Count V, the Plaintiff argues

that various tortious actions of the Defendant resulted in a willful and malicious injury to the

Plaintiff.  Those actions include the Defendant (1) fraudulently sending the June E-Mail containing

the Financial Statements to the Plaintiff (Amended Complaint, ¶ 144), (2) keeping inaccurate and

incomplete records of Foundation's assets to disguise the Defendant's misuse of Foundation funds

(Id., ¶ 145), (3) failing to keep accurate records of Foundation's checks (Id., ¶ 146), (4) paying other

Foundation debts in lieu of payments to the Plaintiff while Foundation was insolvent (Id., ¶ 147),

(5) prematurely emptying Foundation's bank accounts (Id., ¶ 148), (6) opening a new business so

as to strip the Plaintiff of her equity interest in Foundation business activities (Id., ¶ 149), and

(7) selling a minority equity interest in Foundation to the Plaintiff while paying nothing for the

Defendant's majority interest (Id., ¶ 150).[19]

### c.  *The Motion to Dismiss*

The Defendant's arguments in the Motion to Dismiss are largely identical with respect to

both Count IV and Count V.  First, the Defendant asserts that the Plaintiff in the Amended

Complaint has failed to show "(1) an injury in fact that (2) is fairly traceable to the challenged action

of the defendant and (3) is likely to be redressed by a favorable decision."  (*See* Motion to Dismiss,

p. 5).  The Defendant alleges that the Plaintiff does not hold any valid claim against the Defendant,

and the Amended Complaint should thus be dismissed in its entirety pursuant to Rule 12(b)(1).  In

this regard, the Defendant expressly argues that the Plaintiff holds no valid claim against the

---

[19] Although there is substantial overlap, theses allegations do not precisely track the alleged Misdeeds.  To the extent
they differ, the content of both has been considered and addressed in this Order.

Defendant under the Note because the Defendant signed the Note as the president of Foundation and thus has no personal liability for the Note.

Alternatively, the Defendant asserts that the Amended Complaint should be dismissed for failing to state a claim pursuant to Rule 12(b)(6).  More specifically, regarding the Note, the Defendant asserts that the Amended Complaint fails to identify any writing that the Plaintiff relied on prior to the execution of the Note.  With respect to the Guaranty signed by the Plaintiff, the Defendant argues the Plaintiff's claim that the Financial Statements induced the Plaintiff to sign her Guaranty is conclusory and that there is no evidence that the Financial Statements were sent to the Plaintiff in connection with the Guaranty.  The Defendant further argues that Counts IV and V are deficient insofar as they assert the Financial Statements were materially misleading and inaccurate without providing a contemporaneous valuation of Foundation's assets.  The Defendant asserts that the Valuation Discrepancies were caused by Foundation's nineteen (19) month slide into insolvency, rather than by any misdeeds of the Defendant.  Further, to the extent the Financial Statements were actually inaccurate, the Defendant argues that the Amended Complaint has failed to demonstrate that the Defendant created those inaccuracies with the intent to deceive the Plaintiff. The Defendant also argues that any Misdeeds the Plaintiff complains of do not allege a willful and malicious injury because they occurred after the execution of the Note and the Plaintiff having made the Equity Investment in Foundation.

### d.  Law

#### i.  12(b)(1)

In the Motion to Dismiss, the Defendant urges the Court to dismiss Counts IV and V pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.  The Defendant asserts that no subject-matter jurisdiction exists because the Plaintiff does not have a claim against the Defendant that

could be rendered nondischargeable.  In Count IV, as noted above, the Plaintiff asks that its claims against the Defendant with regard to the Note and Guaranties be found nondischargeable.  In Count V, the Plaintiff again asks that the same two claims not be discharged, and adds that a claim for the Equity Investment be determined to be nondischargeable as well.[20]  In both counts the Defendant seems to make a rule 12(b)(1) argument only in regards to the Plaintiff's claim against the Defendant under the Note. [21]

The question is then whether the Defendant has any personal liability with regard to the Note.  The Note itself is not a model of clarity regarding the capacity in which the Defendant signed it.  The Plaintiff asserts that the Note was signed by the Defendant in her individual capacity and on behalf of Foundation.  The Defendant asserts that she signed it only as president of Foundation.  The Note, on its face, neither conclusively affirms or refutes these allegations, as the Defendant signed the note "Dee Benson Diget, President Foundation Ambulance." [22]  Because this is a motion to dismiss, the resolution of that issue should await further development in this case, and the Motion to Dismiss cannot be granted on that basis.

---

[20] For this purpose, the validity of the claims asserted in Counts I-III, to the extent they seek relief other than recovery of the amounts related to the Note, the Guaranties and/or the Equity Investment, will not be considered because there are already claims to support jurisdiction and because claims for such other relief are not incorporated into Count IV or Count V in the Amended Complaint.  (*See* Amended Complaint, ¶¶ 130, 141).  In the requests for relief in Counts I-III, the Plaintiff only seeks relief other than recovery of the amounts related to the Note, the Guaranties and/or the Equity Investment in Count III, where she requests "damages caused by [the Defendant's] breach of her duty of loyalty."

[21] There is no argument the Court can identify that the claim under the Guaranty should be dismissed under Rule 12(b)(1).  Further, it is beyond dispute that, as a co-guarantor, the Defendant would have liability to the Plaintiff for contribution as a result of the Guaranties, and thus does have some potential personal liability to the Plaintiff regarding the Guaranties.  *See* O.C.G.A. § 10-7-50.  Finally, the Defendant's argument regarding the Equity Investment appears to only be related to Rule 12(b)(6), and because there are other liabilities upon which to base jurisdiction, the Court does not need to address the existence of any liability by the Defendant regarding the Equity Investment in this context.

[22] Also relevant to the interpretation of the Note at this stage is the fact that, as noted in Section I above (p. 2-3), the Defendant's schedules in the Main Case listed the Plaintiff as a contingent unsecured creditor in an amount roughly the same amount as the Note for over a year, and were only amended after the Proofs of Claim and the Original Complaint were filed.

In view of the above, the Court has subject-matter jurisdiction over the Amended Complaint, and Counts IV and V will not be dismissed pursuant to Rule 12(b)(1).

### ii.   12(b)(6): Count IV

The Motion to Dismiss alternatively urges the Court to dismiss Counts IV and V pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In Count IV, the Defendant seeks a judgment that the Defendant's debts to the Plaintiff under the Note and the Defendant's co-guaranty of the Bank Loans are not nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). [23]   Section 523(a)(2)(B) states the following:

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (B) use of a statement in writing—
> >
> > > (i) that is materially false;
> > > (ii) respecting the debtor's or an insider's financial condition;
> > > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > > (iv) that the debtor caused to be made or published with intent to deceive;

11 U.S.C. § 523(a)(2)(B).

A properly pled claim for relief under Section 523(a)(2)(B) requires the Plaintiff to show:

> [T]he debtor owes the creditor a debt for money, property, or the extension of credit that was obtained by the debtor through the use of: (1) a written statement; (2) the written statement was materially false; (3) the written statement concerns the debtor's [or an insider's] financial condition; (4) the plaintiff reasonably relied on the statement; and (5) the debtor published the writing with the intent to deceive the plaintiff.

*In re Wells-Lucas*, No. 20-68333-JWC, 2021 WL 1234454, at *8 (Bankr. N.D. Ga.

---

[23] Count IV, per its terms, incorporates Paragraphs 1-97 of the Amended Complaint.  It does not incorporate the allegations contained in Counts I-III or V, such that none of that conduct is considered here to the extent it is not also in Count IV or in the incorporated paragraphs.

Mar. 31, 2021)(*citing In re Eden*, 584 B.R. 795, 808 (Bankr. N.D. Ga. 2018)).

Implicit in this section's requirement that the Plaintiff reasonably relied on the written statement is the requirement that the written statement be delivered to the Plaintiff prior to the creation of the debt. *See In re McClelland*, 2011 WL 2461885 at *15 (Bankr. N.D. Ga. June 8, 2011)(finding that plaintiff's argument under Section 523(a)(2)(B) failed because there was no writing provided by the defendant at the time of plaintiff's investment in the partnership).

Regarding the Note, the Defendant asserts that the Plaintiff could not have relied upon the Financial Statements before accepting the repayment terms in the Note. There is no dispute that the Note was executed on June 19, 2018, and that it merely memorialized loans that the Plaintiff had already given Foundation. There is similarly no dispute that the June E-Mail containing the Financial Statements was sent to the Plaintiff on June 20, 2018, the day after the Note was signed by the Defendant.[24]  In view of these factual allegations,[25] the Amended Complaint does not demonstrate an entitlement to relief under Section 523(a)(2)(B) with respect to the Note, and Count IV will be dismissed as it pertains to the Note.

Regarding the Plaintiff's Guaranty, the Defendant argues that (1) the June E-Mail was not sent regarding that Guaranty and so was not made to induce the Plaintiff to sign that Guaranty,

---

[24] The repayment terms set forth in the Note start in April, 2018, indicating that the repayment terms of the Note had actually been agreed to well prior to its execution. The June E-Mail supports that conclusion, indicating that the Note was prepared by the Plaintiff and sent to the Defendant for execution, which again must have occurred in advance of its execution. Finally, the Plaintiff does not allege in the Amended Complaint that any of the payments due prior to the execution of the Note under the repayment terms set forth in the Note were not made, which would be consistent with a repayment agreement already agreed to. In fact, the Amended Complaint suggests that the first payment default on the Note occurred well later, in February, 2019. (Amended Complaint, ¶¶ 29-30).  In the view of these incontestable facts, there is no way that the Plaintiff could have relied on the Financial Statements in agreeing to the repayment terms of the Note.

[25] The Note does have a line for execution by the Plaintiff. However, the Note, as a promissory note and by its terms, is not an agreement between the parties, but is instead a promise to pay by the maker, and thus does not require a countersignature. Further, there is no allegation that the Note was ever executed by the Plaintiff, and the copy attached to the Amended Complaint contains no such signature.

(2) the Amended Complaint fails to reference any contemporary valuation of Foundation's assets to prove the Financial Statements were inaccurate, and (3) the Valuation Discrepancies were caused by Foundation's nineteen (19) month long slide into bankruptcy.  The Defendant further argues that there is no evidence that the Plaintiff relied on Financial Statements and instead the Plaintiff had her own personal reasons, as an equity holder, for agreeing to the Guaranty.  The Defendant states that "most importantly" she also personally guaranteed the Bank Loans and would not have done so knowing that Foundation was unable to make payments.

All of those things may turn out to be true.  Or not.[26]  Nevertheless, it is well established that factual disagreements do not constitute cause to dismiss a complaint under Rule 12(b)(6). *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1051 (9th Cir. 2008)(holding that a motion to dismiss cannot "hinge on factual disagreements rather than legal deficiencies").  The Motion to Dismiss does not demonstrate that the facts as plead in Count IV could not support an entitlement to relief as to the Plaintiff's claim against the Defendant related to the Plaintiff's Guaranty.   Thus, the Defendant's arguments concerning whether the facts as plead are accurate cannot be a basis for a motion to dismiss.

The Defendant also argues that she did not get the proceeds of the Bank Loans – that those were provided to Foundation – and thus she did not obtain "money, property, services, or an extension, renewal, or refinancing of credit" which she asserts is required by Section 523(a)(2). What Section 523(a) actually says in pertinent part, however, is that a debt is nondischargeable if it is "for . . . an extension . . . of credit . . .obtained by . . . use of a statement in writing that is materially

---

[26] The June E-Mail's text would suggest that the Financial Statements are related to the Bank Loans.  In the Reply, the Defendant asserts that the person referenced in the June E-Mail is the loan broker, rather than a bank employee. That may or may not be, and that may or may not matter, but it is not in the pleading, and is not undisputed or relevant on a motion to dismiss.  There may be an explanation that would change the importance of the June E-Mail, but none of that is relevant to the Motion to Dismiss, where the Plaintiff's allegations are accepted as true.

false, respecting [Foundation's] financial condition, on which [the Plaintiff] relied." In this case, the relevant "credit" is the Plaintiff's credit, which was extended and from which the Defendant's own contribution liability arose. Further, under the "receipt of benefit" theory adopted by the Eleventh Circuit, to satisfy Section 523(a) the Defendant does not have to directly obtain the money in question but must only "gain a benefit from the money that was obtained by fraudulent means." *In re Bilzerian,* 100 F.3d 866, 890 (11th Cir. 1996). Given the Defendant's ownership interest in Foundation, the Plaintiff's allegation that she was fraudulently induced so that Foundation would obtain funds would be sufficient to allege that the Defendant obtained credit from the Plaintiff.

Based on the foregoing, the Motion to Dismiss will be denied as to dischargeability under Section 523(a)(2)(B) of any claim held by the Plaintiff against the Defendant related to the Guaranties because the Motion to Dismiss fails to establish that Count IV is legally deficient as to such claims.[27]

### iii.   *12(b)(6): Count V*

In Count V, the Plaintiff requests that the Court order that the Defendant is liable for the full amount of the Note, the full amount of the Bank Loans that the Plaintiff and the Defendant co-guaranteed, and the full amount of the Equity Investment; and that the Court render these nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The Defendant asks that the Court dismiss Count V in its entirety. Section 523(a)(6) states the following:

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

---

[27] As asserted by the Plaintiff, this claim appears to be that the Defendant defrauded her with the June Financial Statement into taking on the liability under the Guaranty and into subordinating her claims and her security interest in equipment. Based on those claims, the Plaintiff asks that the Court determine that "Defendant's debt to [the Plaintiff] under . . . Defendant's co-guaranty of the Bank Loans not be discharged." As noted previously, the Defendant has a contribution obligation to the Plaintiff under Georgia law. With regard to that obligation, as the Trustee noted in the Trustee's Objection Response, that contribution claim is likely not allowable as against the estate. *See* 11 U.S.C. § 502(e)(1)(B). Neither party here briefed the issue of whether this fact has any bearing on whether the same obligation can be nondischargeable as to the Debtor, which is thus not decided here.

(6) for willful and malicious injury by the debtor to another entity or to the
property of another entity;

11 U.S.C. § 523(a)(6).

A "willful and malicious injury" under Section 523(a)(6) is best understood to be an act done with

the actual intent to cause injury to the aggrieved party, such as an intentional tort. *In re Crumley*,

No. ADV 11-2083, 2011 WL 7068913, at *2 (Bankr. N.D. Ga. Aug. 10, 2011).

As an initial matter, Count V should be dismissed to the extent it asks the Court to render

the Note due in full, to make the Defendant liable for the full amount of the Bank Loans, and to

make the Defendant liable for the full amount of the Equity Investment. Bankruptcy courts cannot

fashion relief that is not established in the Bankruptcy Code. *Pereira v. First N. Am. Nat. Bank*,

223 B.R. 28, 31 (N.D. Ga. 1998)("The Bankruptcy Code provides a comprehensive scheme

reflecting a 'balance, completeness and structural integrity that suggests remedial

exclusivity.'")(*quoting In re Shape, Inc.*, 135 B.R. 707, 708 (Bankr. D. Me. 1992)).

There is no legal basis to render the Note due in full to the Plaintiff or to render the

Defendant liable for the Bank Notes or the Equity Investment in full. Those obligations occurred

prior to all of the conduct referenced in Count V. Nondischargeability under Section 523(a)(6) is

predicated on the claim arising from the complained of conduct, such that obligations that existed

prior to the complained of conduct cannot be nondischargeable under Section 523(a)(6). *In re*

*Gaddy*, 977 F.3d 1051, 1059 (11th Cir. 2020)(holding that plaintiff's argument that the debt was

excepted from discharge failed as a matter of law because the debt was incurred *before* the alleged

fraud). The Plaintiff presents the Court with no authority which would suggest that the requested

remedies as to the Note, the Bank Loans (including the Guaranties), or the Equity Investment are

available under Section 523(a)(6). Further, the Court cannot find any authority that would permit

it to grant the Plaintiff such relief. Regardless of what relief may otherwise be appropriate for the

harms alleged, there is no legal basis for relief of the kind requested in Count V as to the Note, the Bank Loans (including the Guaranties), or the Equity Investment.

Moreover, there is no legal basis to render any debt actually arising from the complained-of conduct nondischargeable pursuant to Section 523(a)(6) based on the facts pled in Count V.[28] First, in Count V, ¶ 144, the Plaintiff argues that the Defendant caused willful and malicious injury to the Plaintiff by sending the Financial Statements to the Plaintiff in the June E-Mail.  False written financial statements are more specifically addressed in Section 523(a)(2)(B).  Thus, Section 523(a)(6) may not be used to circumvent Section 523(a)(2)(B) nor to permit the Plaintiff to take two bites at the apple of a nondischargeability ruling on the basis of false written financial statements.  *In re Gulevsky*, 362 F.3d 961, 964 (7th Cir. 2004)(holding that Section 523(a)(6) may not be used to circumvent Section 523(a)(2)(B)).  Count V should be dismissed insofar as Count V relies on the Financial Statements to seek nondischargeability based on a written statement which is otherwise addressed in Count IV pursuant to Section 523(a)(2)(B).[29]

Next, the Plaintiff asserts in Count V, ¶¶ 145–46, that the Defendant's failure to keep and distribute to the Plaintiff accurate and complete records of Foundation's assets and the Defendant's failure to keep accurate records of Foundation's checks is willful and malicious pursuant to Section 523(a)(6).  However, the negligent failure of a corporate officer to keep adequate business records—by virtue of the officer's negligence or recklessness—cannot provide a basis for a "willful and malicious" injury as described in Section 523(a)(6).  *Kawaauhau v. Geiger*, 523 U.S.

---

[28] Count V, per its terms, incorporates Paragraphs 1-97 of the Amended Complaint.  It does not incorporate the allegations contained in Counts I-IV, such that none of that conduct is considered here to the extent it is not also in Count V or in the incorporated paragraphs.

[29] Moreover, like Count IV, Count V could be dismissed as to the Note and its relation to the Financial Statements simply due to the undisputed fact that the funds were delivered, and the Note executed, before the Defendant sent the June E-Mail.

57, 64 (1998)("We hold that debts arising from recklessly or negligently inflicted injuries do not

fall within the compass of § 523(a)(6)."), *see also* 11 U.S.C. § 727(a)(3)(providing an objection to

discharge for this type of activity, which would be partly duplicative if § 523(a)(6) could be read

this way).  As such, Count V is dismissed regarding the Defendant's allegedly inadequate record

keeping.

The Plaintiff claims in Count V, ¶ 147, that the Defendant willfully and maliciously paid

other Foundation debts in lieu of payments to the Plaintiff while Foundation was insolvent.  To

the extent the Plaintiff complains about certain creditors being paid in lieu of the Plaintiff, those

facts may provide the estate with a potential preference cause of action, but it does not provide the

Plaintiff with a "willful and malicious" injury described in Section 523(a)(6).  *In re Robinson-*

*Vinegar*, 561 B.R. 562, 569 (Bankr. N.D. Ga. 2016)("The fact that Debtor should have known

Plaintiffs would suffer loss if she did not repay the loan does not necessarily establish the type of

injury in view under Section 523(a)(6).").  As such, Count V is dismissed regarding the

Defendant's payments to other Foundation creditors.

The Plaintiff also argues in Count V, ¶ 148, that the Defendant "prematurely"[30] emptied

Foundation's bank accounts and transferred Foundation funds and assets, including substantial

salary payments to the Defendant and the Defendant's husband, so that Foundation could avoid

paying creditors.  A transfer of property may satisfy the Section 523(a)(6) standard of "willful and

malicious" only if the debt was the "result of" the fraudulent transfer.  *In re Gaddy,* 977 F.3d 1051,

1058 (11th Cir. 2020)(explaining that the language "debt for" in § 523(a)(6) means "'debt as a

---

[30] The implication of this complaint is that Foundation, through the Defendant, should have left all of its money in its bank accounts with the Bank so that they could be set off by the Bank, thereby reducing the debt guaranteed by the Plaintiff.  The Court is not aware of, and the Plaintiff did not identify, any duty to any party (borrower or guarantor) to facilitate collection, particularly where the borrower [Foundation] is still trying to operate its business.

result of,' 'debt with respect to,' 'debt by reason of,' and the like"). When the debt is incurred

long before the challenged conveyances took place, the Debtor's actions, "even if an effort to

thwart a creditor's collection efforts by fraudulently conveying assets," do not create a separate

injury for the purposes of Section 523(a)(6). *Id.; see also In re Wisner,* 608 B.R. 589, 600 (Bankr.

N.D. Ga. 2019)("[I]t is generally held that alleged fraudulent transfers that occur to avoid payment

of a judgment not itself the result of a willful and malicious act, do not provide a basis for

nondischargeability of the judgment under § 523(a)(6)."). Here, the Plaintiff alleges that the

Defendant's transfer of company assets caused injury based on the Plaintiff's now inability to

collect money from debts the Plaintiff incurred through the Note, Bank Loans (including the

Guaranties), and the Equity Investment, not the alleged transfer itself. Thus the alleged transfers

did not cause the debt that the Plaintiff seeks to discharge.[31] As such, Count V will be dismissed

as it pertains to the liquidation and transfer of Foundation's assets.[32]

Next, in Count V, ¶ 149, the Plaintiff asserts that the Defendant's opening of Frontier as a

new business venture so as to strip the value from the Plaintiff's equity interest in Foundation, and

so as to continue Foundation's business activities under a new moniker, constitutes a basis for

nondischargeability of the Equity Investment under Section 523(a)(6). As discussed *supra,*

transfers of property may satisfy the Section 523(a)(6) standard of "willful and malicious" only if

the debt arose from the transfer itself. Facts able to satisfy this standard typically require the

---

[31] Count V as pled does not seek to recover as a nondichargeable claim the amounts allegedly transferred, such that this analysis would not apply to such a claim. As to such potential claims, see *In re Jennings*, 670 F.3d 1329 (11th Cir. 2012) and *In re Shahid*, 2016 WL 11003505 (Bankr. N.D. Fla. Nov. 3, 2016).

[32] To the extent that the Plaintiff argues in Count V that the liquidation of Foundation's bank accounts amounts to embezzlement, Section 523(a)(6) cannot provide a legal basis for relief in substitution for a claim under Section 523(a)(4). *Geiger*, 523 U.S. at 62 (rejecting an overly expansive reading of Section 523(a)(6) that would render other portions of Section 523(a) superfluous). Such a claim would also belong first to Foundation, the funds of which were purportedly embezzled.

creditor to have a security interest in the property transferred or a judgment on the fraudulent transfer claim at the time of the nondischargeability complaint. *See In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012)(granting an exception to discharge under § 523(a)(6) because the creditor "had a judgment that established a right to payment based on the damage [the debtor] did to his property interest in collecting on his personal injury judgment"). There is no underlying fraudulent transfer judgment in this case attaching to an interest in Foundation's assets that establish a right to payment for the Plaintiff's Equity Investment.[33] Therefore, Count V will be dismissed to the extent it concerns the unauthorized and undisclosed establishment of Frontier with Foundation assets.[34]

Finally, the Plaintiff in Count V, ¶ 150, urges that the Defendant selling a minority equity interest in Foundation to the Plaintiff while paying nothing herself for a majority interest constitutes "willful and malicious" injury under Section 523(a)(6). The Plaintiff cites no authority for this novel proposition, nor does she explain why the Defendant, who owned 100 % of Foundation prior to the transaction in question, would for any reason have to pay anything to retain her 66 2/3 % interest in Foundation. There is nothing nefarious about such a retention.[35] In view of the foregoing, Count V will be dismissed to the extent it asserts that the Plaintiff's purchase of an interest in Foundation or the Defendant's failure to pay anything for her majority stake in

---

[33] The Plaintiff only asserted that the Defendant's formation of Frontier prevented the Plaintiff from recovering her Equity Investment. The Plaintiff did not allege that such transfer affected the recovery of her Note nor has the Plaintiff included in her Amended Complaint any of the required allegations demonstrating that the Defendant's action was intended to prevent the Plaintiff from recovering on her loan that was secured by certain Foundation equipment.

[34] To the extent that the Plaintiff argues in Count V that the liquidation of Foundation's bank accounts amounts to embezzlement, Section 523(a)(6) cannot provide a legal basis for relief in substitution for a claim under Section 523(a)(4). *Geiger*, 523 U.S. at 62 (rejecting an overly expansive reading of Section 523(a)(6) that would render other portions of Section 523(a) superfluous). Such an objection would also belong first to Foundation, the funds of which were purportedly embezzled.

[35] To the extent that the Plaintiff contends that she was defrauded by the Defendant into believing that the equity in Foundation was worth $1,500,000.00 in connection with the Equity Investment, that would require more specific pleading of those facts and an allegation under other parts of Section 523.

Foundation renders a claim for the return of the Equity Investment by the Defendant nondischargebale under Section 523(a)(6).

None of the allegations in Count V could provide the Plaintiff with a legal basis for rendering a debt nondischargeable under Section 523(a)(6). As a result, Count V will be dismissed in its entirety.

## V.    CONCLUSION

As to Count IV, the Motion to Dismiss will be granted in part and denied in part. The Motion to Dismiss is denied as it pertains to Count IV and the claims related to the Guaranties. To the extent Count IV relates to the Financial Statements and the Note, the Motion to Dismiss is granted. The Motion to Dismiss is granted as to Count V in its entirety.

In response to the Defendant's Motion to Dismiss, the Plaintiff alternatively requests leave to amend her Complaint. "Ordinarily, if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, leave to amend should be freely given." *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1162 (11th Cir. 2004). However, the Court "may properly deny leave to amend the complaint when such amendment would be futile." *Id.* at 1263 ("[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."). Further, a party seeking to amend a pleading must move to do so under Federal Rule of Civil Procedure 15(a), made applicable under Bankruptcy Rule 7015 and "must either attach a copy of the proposed amendment to the motion or set forth the substance thereof." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1362 (11th Cir. 2006). Here, the Plaintiff did not properly move for leave to amend the complaint, nor did she attach an amended pleading or describe how the amended pleading would cure the deficiencies in the Amended Complaint. Further, given the extensive time Plaintiff had to file this complaint, including an opportunity to amend it once before,

the Court finds that further leave to amend would not only be futile but would cause undue prejudice to the Debtor who is entitled to certainty as to the extent of her discharge. *See Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1014 (11th Cir. 2005)("[Plaintiff's 'repeated failure to cure deficiencies by [previous] amendments' is an explicitly permitted reason for which the district court was entitled to deny his motion to amend."). Thus, the request for leave to amend Counts IV and V is denied.

In light of the above it is,

**ORDERED** that the Motion to Dismiss is **GRANTED** as to Counts IV and V as follows:

1.     Count IV is **DISMISSED** as it pertains to the claim that the Defendant used the Financial Statements to induce the Plaintiff to accept the repayment set forth in the Note; and,

2.     Count V is **DISMISSED in its entirety**. And it is further,

**ORDERED** that the Motion to Dismiss is **DENIED** as to Count IV to the extent Count IV relates to the claim that the Defendant used the Financial Statements to induce the Plaintiff to sign the Guaranty. And it is further,

**ORDERED** that the request for leave to amend is **DENIED** as to Counts IV and V.  And it is further,

**ORDERED** that a status conference shall be held regarding (i) the Motion to Dismiss as it pertains to Counts I, II, and III[36] and (ii) the further prosecution of the remainder of Count IV **on November 1, 2021 at 1:30 PM**.

---

[36] Counts IV and V do not incorporate the allegations contained in Counts I-III and, as presently pled, Counts I-III do not separately assert that the resulting claims are nondischargable under any theory.  Consequently, unless the claims set forth in Counts I-III are nondischargeable pursuant to Count IV or Count V, it does not appear that any purpose would be served in liquidating those general unsecured claims because, according to the Chapter 7 Trustee, all of the distributable assets of the bankruptcy estate are likely to be distributed to pay administrative claims and priority unsecured claims.

The Clerk is directed to serve a copy of this Order upon the Plaintiff, counsel for the Plaintiff, the Defendant, counsel for the Defendant, the Chapter 7 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**