

**IT IS ORDERED as set forth below:**

**Date: March 3, 2022**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | CASE NO. **19-12387-PMB** |
| **DEE BENSON DIGET** | : | |
| **and DAVID KENNETH DIGET, II,** | : | |
| | : | CHAPTER 7 |
| Debtors. | : | |
| | : | |
| ―――――――――――――――――― | : | |
| | : | |
| **DIANA MAY-DIGET DUBBELD,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | ADVERSARY PROCEEDING |
| v. | : | |
| | : | NO. **20-1042** |
| **DEE BENSON DIGET,** | : | |
| | : | |
| Defendant. | : | |
| ―――――――――――――――――― | : | |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEBTOR'S AMENDED MOTION TO DISMISS REGARDING
## <u>COUNTS I, II, AND III OF THE PLAINTIFF'S AMENDED COMPLAINT</u>

This matter comes again before the Court on *Defendant's Amended Motion to Dismiss* filed

by Dee Benson Diget, the above-named Defendant and Co-Debtor herein (the "<u>Debtor</u>" or the

"Defendant"),[1] on March 3, 2021 (Docket No. 18)(the "Motion") and related *Brief in Support of Defendant's Amended Motion to Dismiss* (Docket No. 19)(the "Debtor's Brief"; collectively, with the Motion, the "Motion to Dismiss").   The Plaintiff named above, Diana May-Diget Dubbeld (the "Plaintiff"), initiated this matter (the "Adversary Proceeding") by filing a two (2) count *Complaint to Determine Dischargeability of Debts* on December 15, 2020 (Adversary Docket No. 1)(the "Original Complaint").   Thereafter, through the consent of the parties,[2] on February 4, 2021, the Plaintiff filed a five (5) count *Amended Complaint to Determine Dischargeability of Debts* (Adversary Docket No. 11)(the "Amended Complaint"), adding Counts I, II, and III that are addressed herein to the Original Complaint.[3]

## I.    PROCEDURAL BACKGROUND AND POSTURE

The Motion to Dismiss was previously considered in the *Order Granting in Part and Denying in Part Defendant's Motion to Dismiss*, dated September 30, 2021 (Docket No. 25)(the "Prior Order").   The Prior Order addressed only Counts IV and V of the Amended Complaint. The Debtor filed the Motion to Dismiss following entry of a *Scheduling Order* (Docket No. 17) on March 2, 2021.   In the Scheduling Order, the Court established a timeline for filing motions

---

[1] The Debtor, along with David Kenneth Diget, II (collectively, the "Debtors"), commenced this case by filing a voluntary petition for relief under Chapter 7 on November 26, 2019 (Main Case, Docket No. 1).

[2] *See Consent Order Accepting Filing of Amended Complaint,* entered on March 4, 2021 (Docket No. 21).

[3] In the Amended Complaint, the Plaintiff added Counts I, II, and III to the Original Complaint that had only contained Counts IV and V and sought a determination of dischargeability of debt under 11 U.S.C. § 523(a)(2)(B) and 11 U.S.C. § 523(a)(6), respectively.   The Amended Complaint includes fourteen (14) attached exhibits in support of the Plaintiff's factual allegations (the "Exhibits").

and responses with respect to the nondischargeability counts of the Amended Complaint, Counts

IV and V.[4]   On March 19, 2021, the Plaintiff filed a *Response in Opposition to Defendant's*

*Amended Motion to Dismiss* (Docket No. 23)(the "Plaintiff's Response"), and on March 26, 2021

the Debtor filed a *Reply to Plaintiff's Response to Motion to Dismiss* (Docket No. 24)(the

"Reply").[5]

In the Motion to Dismiss, the Debtor seeks dismissal under Rules 12(b)(1) and 12(b)(6) of

the Federal Rules of Civil Procedure, incorporated herein through Rule 7012(b) of the Federal

Rules of Bankruptcy Procedure.   In the Prior Order, Count IV of the Amended Complaint was

dismissed in part and Count V was dismissed in its entirety.   With respect to Count IV, the

Plaintiff was found to have failed to state a claim in accordance with Rule 12(b)(6), F.R.C.P., as

to the Note[6] under Section 523(a)(2)(B), since the Plaintiff could not have relied upon certain

---

[4] As stated in the Prior Order (pp. 4 & 11), following several status conferences held in February and March of 2021, it was determined that the Court should first adjudicate Counts IV and V of the Amended Complaint, which concerned the issue of dischargeability.   The Chapter 7 Trustee in this case (the "Trustee") indicated that he would not participate in the Adversary Proceeding until the Court had rendered a judgment on Counts IV and V, at which point he would evaluate his future involvement in this matter.   The procedural background of this matter, summary of alleged facts and Plaintiff's allegations, and certain defined terms are described in the Prior Order.   That discussion, and those definitions, are incorporated herein by reference.

[5] The Debtor filed *Defendant's Motion to Dismiss* regarding the Original Complaint on January 7, 2021 (Adversary Docket No. 5) to which the Plaintiff filed a *Response in Opposition to Defendant's Motion to Dismiss* on February 4, 2021 (Docket No. 12).   The Debtor filed *Defendant's Motion to Dismiss* regarding the Amended Complaint on February 18, 2021 (Docket No. 16).   As noted in the Prior Order, all of these documents have been amended and superseded by the Motion to Dismiss.   *See* Prior Order, p. 3, n. 5.

[6] As recited in the Prior Order (p. 6), it is alleged that in June of 2017, the Plaintiff acquired a 33 1/3 % ownership interest in Foundation Ambulance, Inc. ("Foundation") in exchange for an investment of $500,000 through a conversion of prior loans (the "Equity Investment").   The Debtor retained a 66 2/3 % ownership interest in the business.   (Amended Complaint, ¶¶ 15-16).   After the Equity Investment, the Plaintiff made additional loans to the business.   (*Id*. at ¶¶ 20-21, 24-26).   A promissory note formally memorializing the loan obligation to the Plaintiff for these loans and setting forth repayment terms was executed on June 19, 2018 (the "Note")(*Id*. at ¶¶ 26-27 and Exhibit 1).   The Note stated a principal amount of $441,736.43, an annual interest rate of nine (9%) percent, and increasing weekly payments with a maturity date in 2023.   The Note was secured by a security interest in certain equipment owned by Foundation. (*Id*. at ¶ 27 and Exhibit 1), but no perfection of that security interest has been alleged.

3

Financial Statements[7] in accepting the repayment terms in the Note (*see also*, pp. 4-5, *infra*). However, dismissal was found not to be appropriate as to the Plaintiff's Guaranty[8] given the existence of certain factual disagreements. *See* Prior Order, pp. 17-18. Although the Debtor sought dismissal of all Counts in the Amended Complaint in the Motion to Dismiss, no ruling was made in the Prior Order concerning the dismissal of Counts I, II, and III. Prior Order, p. 5, n. 8. Unlike Counts IV and V, those specific counts do not assert that the causes of action asserted therein should be excepted from discharge. Further, none of the allegations contained specifically in Counts I - III are incorporated in Counts IV and V. Amended Complaint, ¶¶ 130, 141.

In addition, prior to filing the Original Complaint, on December 1, 2020, the Plaintiff filed three (3) proofs of claim in the Main Case (Main Case, Claims Docket, Claim Nos. 22-24)(the "Proofs of Claim"). In Proof of Claim No. 22 ("POC No. 22"), the Plaintiff asserts a general unsecured claim in the total amount of $463,449.80 for "[m]oney loaned" and due and owing under

---

[7] As stated in the Prior Order, "after the Note was signed—on June 20, 2018—the Defendant sent an e-mail to the Plaintiff (the 'June E-Mail'). The June E-Mail included as attachments the Note signed by the Debtor, a *Foundation Ambulance Inc. Balance Sheet May 2018*, and a *Foundation Ambulance Inc. Income Statement Year-to-Date Only, May 2018 – current month* (the latter two items, collectively, the 'Financial Statements')." *See* Prior Order, p. 6, citing Amended Complaint, ¶ 28 and Exhibit 2. The Court also stated that neither party had addressed whether disallowance in the Chapter 7 case of the contribution claim under the Plaintiff's Guaranty (as noted below) would have any effect on the remaining claim for relief under Count IV. Prior Order, p. 19, n. 27.

[8] It is alleged that on July 23, 2018, Foundation borrowed $568,000.00 (the "Bank Loans") from First Landmark Bank (the "Bank"). *See* Prior Order, pp. 6-7. To obtain the Bank Loans, the Plaintiff further states that the Bank required her to subordinate her claim and security interest against Foundation to the Bank Loans. (Amended Complaint, ¶¶ 31, 33 and Exhibit 3). In addition, the Plaintiff and the Debtor each allegedly executed a guaranty agreement (each a "Guaranty", and collectively the "Guaranties")(Id., ¶¶ 41-42, Exhibits 10 & 11), in which the respective guarantors personally guaranteed the repayment of the Bank Loans (though the Plaintiff does not concede that she did), and in which the Note was allegedly subordinated to the Bank Loans. (As noted in the Prior Order (p. 7, n. 14), there is no evidence in the record here to suggest a subordination was actually affected). The Bank was granted a first priority security interest in all of Foundation's assets with regard to the Bank Loans. (Amended Complaint, ¶ 40). On August 23, 2019, Foundation entered into a *Change in Terms Agreement* (the "Change Agreement"), extending the maturity date of the Bank Loans. (*Id.*, ¶ 44). The Plaintiff insists she was not informed of this extension. (*Id.*, ¶ 45). It is not alleged that the Plaintiff has yet made any payments on her Guaranty, and this obligation remains contingent in nature.

the Note in the original principal amount of $441,736.43 plus interest and late fees signed by "Dee Benson Diget, President of Foundation Ambulance" on June 19, 2018 (a copy of the Note is also attached to POC No. 22).[9]   In Proof of Claim No. 23 ("POC No. 23"), the Plaintiff asserts a general unsecured claim in an unliquidated amount for "[c]ontribution for potential liability of co-guarantor" regarding certain obligations allegedly due South State Bank, N.A.[10] by Foundation under two (2) loans made by the Bank in the approximate amount of $568,000 (*i.e.* the Bank Loans).   Finally, in Proof of Claim No. 24 ("POC No. 24"), the Plaintiff asserts a general unsecured claim in an amount of $500,000 for "Breach of Fiduciary Duty, Breach of Duty of Loyalty, Negligent Misrepresentation."   The Plaintiff alleges that she paid $500,000 in connection with the purchase of a 33 1/3% interest in Foundation (*i.e.* the Equity Investment).   Based on this payment, the Plaintiff asserts a claim against the Debtor in this amount arising from alleged breaches by the Debtor of her duty of loyalty and fiduciary duty owed to the Plaintiff "stripping [the Plaintiff] of her $500,000 equitable interest in the business."  *See Addendum to Proof of Claim* (as attached to POC No. 24).

---

[9] Foundation separately filed for relief under Chapter 7 on January 23, 2020 and was assigned Case No. 20-10165-PMB.  As noted in the Prior Order, the Debtor's precise title with respect to Foundation is not entirely clear.  *See* Prior Order, p. 5, n. 9 ("Chief Executive Officer" (Amended Complaint, ¶ 17); signing Foundation's Petition as well as the various loan documents as "President" (*Id.*, ¶¶ 28 & 34 and Exhibits 2 & 4)).  The Debtor was at all relevant times an officer, director, and managing executive of Foundation and the sole member of its board of directors.  Amended Complaint, ¶¶ 3-4, 17.   The Debtor is also the Plaintiff's sister-in-law.

[10] First Landmark Bank, which made the Bank Loans, was allegedly merged into CenterState Bank, N.A. ("CenterState"), and is allegedly now known as South State Bank, N.A.  Upon default, CenterState commenced an action to collect the Bank Loans against Foundation and the Plaintiff in the Superior Court of Cobb County, Georgia that remains pending.  Amended Complaint, ¶ 47.   In addition, as noted by the Debtors and as reflected on the docket, CenterState commenced an adversary proceeding in this bankruptcy case against the Debtor to determine dischargeability of debt (Adversary Proceeding No. 20-1011), that was settled and dismissed.  *See Stipulation of Dismissal of Adversary Proceeding*, filed on September 24, 2020 (Adversary Docket No. 10).

On January 5, 2021, the Debtors filed *Debtors' Objection to Proofs of Claim Nos. 22, 23 and 24 Filed by Diana Dubbeld* (Main Case, Docket No. 89)(the "Objection"). On February 4, 2021, the Plaintiff responded to the Objection by filing *Respondent's Response to Debtors' Objection to Proofs of Claim Nos. 22, 23 and 24* (Main Case, Docket No. 101)(the "Objection Response"). The Trustee also filed the *Trustee's Response to Debtors' Objection to Proofs of Claim Nos. 22, 23, and 24 Filed by Diana Dubbeld* on February 4, 2021 (Main Case, Docket No. 100)(the "Trustee's Response").[11]

In the Prior Order, the Court scheduled a Status Conference on this matter that was held on November 10, 2021 (the "Status Conference"). *See Order and Notice Rescheduling Status Conference*, entered October 1, 2021 (Adversary Docket No. 26). During the Status Conference, the Court and the parties discussed the process for addressing the remaining issues in this Adversary Proceeding along with the Proofs of Claim and the Objection. The Plaintiff asked that a ruling be entered on the Motion to Dismiss regarding Counts I, II, and III because they appear to overlap with matters alleged in the Proofs of Claim. It was also decided at the Status Conference that the scope of Counts I, II, and III needs to be determined in connection with the Motion to Dismiss before the parties engage in discovery so that discovery can be tailored more efficiently.

In accordance with the Court's instruction at the Status Conference, the Plaintiff filed her *Supplemental Response in Opposition to Defendant's Amended Motion to Dismiss* on November

---

[11] In the Trustee's Response, the Trustee contends that POC No. 22 should be disallowed because the Debtor is not an obligor on the Note and that POC No. 23 should be disallowed against the Debtors' estate herein as representing a contingent claim for contribution under 11 U.S.C. § 502(e). In addition, due to the limited amount of assets available in this case, the Trustee states his participation in any litigation regarding the Objection to POC No. 24 could exhaust those assets through legal fees, which he seeks to minimize for purposes of any distribution to creditors. The Trustee further represents that Foundation has no errors and omissions insurance, and that he will pay whatever amount the Court deems appropriate on POC No. 24. *See* Trustee's Response, ¶¶ 5-6.

6

30, 2021 (Docket No. 30)(the "Supplemental Response"), that incorporates the Plaintiff's

Response in which, among other things, she objects to the Debtor's standing to bring the Objection.

The Debtor filed her *Supplemental Brief in Support of Defendant's Amended Motion to Dismiss*

on December 9, 2021 (Docket No. 31)(the "Debtor's Supplemental Brief").   The Debtor also filed

her *Answer to Amended Complaint* on October 13, 2021 (Docket No. 29)(the "Answer").   As

contemplated in the Prior Order and as discussed at the Status Conference, the Motion to Dismiss

as to Counts I, II, and III of the Amended Complaint is addressed in this Order.   All pleadings and

orders on the docket have been considered in connection with this Order.[12]

## II.      STANDARD OF REVIEW

Under Rule 12(b)(1), F.R.C.P., the court may dismiss a complaint if it does not have subject

matter jurisdiction over the claim.   Subject matter jurisdiction of the bankruptcy court is limited

to "all cases under title 11 [of the United States Code]" and any or "all civil proceedings arising

under title 11, or arising in or related to cases under title 11."   28 U.S.C. § 1334(a) & (b); *see also*

28 U.S.C. § 157(a).   Moreover, a plaintiff must establish its standing to bring suit on a claim and

a motion to dismiss for lack of standing is "properly brought pursuant to Rule 12(b)(1) because

standing is a jurisdictional matter."   *Ballentine v. United States*, 486 F.3d 806, 810 (3rd Cir. 2007).

*See also Roberts v. Swearingen*, 358 F.Supp.3d 1341, 1346 (M.D. Fla. 2019)(standing "is a

fundamental component of the Court's subject matter jurisdiction")(citation omitted).   As a

prerequisite for subject matter jurisdiction, a party asserting standing must allege "an actual case

---

[12] In the Prior Order, the Court reviewed some of the same factual allegations made in connection with the Proofs of Claim and the Objection.   As stated in the Objection Response, the Plaintiff maintains that the Amended Complaint expands upon the facts alleged in the Proofs of Claim.   The Objection will be addressed in a separate written order.

or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 493-94, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). To establish standing, the plaintiff must show "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020)(*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Further, dismissal of a complaint is appropriate under Rule 12(b)(6), F.R.C.P., if it fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is viewed through Rule 8(a), which requires that a pleading set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2) and Fed.R.Bankr.P. 7008. Under this standard, "to survive a motion to dismiss, a complaint must now contain factual allegations that are 'enough to raise a right to relief above the speculative level.'"[13] In addition, pursuant to Rule 9(b), F.R.C.P., applicable herein through Rule 7009, F.R.B.P., fraud must be pled with particularity and, although malice and intent may be alleged generally, facts regarding time, place, and content of any alleged misrepresentations must be provided.[14]

In evaluating a motion to dismiss, the Court's inquiry is confined "to the legal feasibility of the complaint and whether it contains facts and not just labels or conclusory statements." *In re Lafayette*, 561 B.R. 917, 922 (Bankr. N.D. Ga. 2016). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give

---

[13] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007), quoted in *Berry v. Budget Rent A Car Systems, Inc.*, 497 F.Supp.2d 1361, 1364 (S.D. Fla. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

[14] *United States v. Baxter Intern., Inc.*, 345 F.3d 866, 833 (11th Cir. 2003); *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997).

rise to an entitlement to relief." *Ashcroft*, *supra*, 556 U.S. at 679. A claim has "facial plausibility" when the facts alleged permit the court to draw the inference that the defendant is liable on the grounds asserted. *Bank of Am. v. Seligman (In re Seligman)*, 478 B.R. 497, 501-02 (Bankr. N.D. Ga. 2012)(citations omitted). In cases "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft, supra*, 556 U.S. at 679, quoting Fed.R.Civ.P. 8(a)(2). In addition, dismissal is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### III.    DISCUSSION

In the Amended Complaint, the Plaintiff asserts the following theories for relief against the Debtor in Counts I, II, and III: Count I—fraud in the inducement; Count II—breach of fiduciary duty; and Count III—breach of the duty of loyalty. As previously mentioned, (note 4, *supra*), many of the alleged facts and the Plaintiff's allegations are summarized in the Prior Order (pp. 5-9) and those facts and allegations are incorporated herein. Applying the dismissal standards referenced above, Counts I, II, and III are examined below.

#### A. *Count I (Fraud in the Inducement)*

In Count I of the Amended Complaint, the Plaintiff alleges that the Debtor knowingly used false representations concerning the financial health of Foundation, particularly with respect to the value of its assets, upon which the Plaintiff reasonably relied, to induce the Plaintiff to accept the repayment terms of the Note, enter the Plaintiff's Guaranty, subordinate her interest in favor of the Bank Loans, and make the Equity Investment. In support of this claim, the Plaintiff asserts that

the Debtor failed to provide certain financial statements as agreed, "purposefully concealed" her use of corporate funds to pay personal expenses, and through the information that was offered represented Foundation had sufficient assets to repay the Bank Loans and the Note upon liquidation.  Amended Complaint, ¶¶ 99-107.   The Plaintiff states she was injured by her reliance on these alleged misrepresentations since the Debtor and Foundation are both in bankruptcy and Foundation does not have sufficient assets to satisfy the above obligations.   Based on these actions, the Plaintiff asks for judgment determining that (i) the Debtor "is liable for the amount [the Plaintiff] loaned to Foundation under the Note," (ii) the Debtor "is liable for repayment [of] the Bank Loans she induced Plaintiff to enter," and (iii) the Debtor is liable for "the $500,000 she was paid [by the Plaintiff] for [the] 33 1/3 interest in Foundation…."  *See* Amended Complaint, ¶¶ 98-107 (incorporating ¶¶ 1-97).

In the Motion to Dismiss, the Debtor argues that the Plaintiff has not alleged facts with sufficient particularity regarding misrepresentations made prior to either the Plaintiff making the Equity Investment or lending the funds evidenced by the Note on which the Plaintiff could have relied.[15]   The Debtor also asserts that any alleged failure to provide financial statements in the future cannot support a claim for relief for fraudulent inducement because this allegation lacks

---

[15] To make a claim for the tort of fraud under Georgia law, the following must be shown:

> (1) a false representation by the defendant; (2) with scienter, or knowledge of the falsity; (3) with intent to deceive the plaintiff or to induce the plaintiff into acting or refraining from acting; (4) on which the plaintiff justifiably relied; (5) with the proximate cause of damage to the plaintiff.

Debtor's Brief, p. 7, citing *Prince Heaton Enter., Inc. v. Buffalo's Franchise Concepts, Inc.,* 117 F.Supp.2d 1357, 1360 (N.D. Ga. 2000)(citations omitted).   As added by the Debtor, "fraud must be pled with particularity," and "facts regarding time, place and content of any alleged misrepresentations must be offered."  *Atlanta Reg'l Ctr v. Smith*, *(In re Smith)*, 578 B.R. 866, 872 (Bankr. N.D. Ga. 2017)(citations omitted).

specificity regarding when such an agreement was made to provide them and how the Plaintiff would have relied upon them.   Further, to support such a claim, Plaintiff must allege that the Debtor did not have the ability to provide the statements or never intended to do so at the time of the representation, which the Plaintiff did not do.   *See generally Atlanta Reg'l, supra*, 578 B.R. at 876.

Although the Plaintiff need not prove her case to state a claim for relief, and the Court accepts her allegations as true on a motion to dismiss, it does not appear that the Plaintiff has set forth sufficient facts to support a plausible claim for relief in Count I as to the Note.   Even if the Plaintiff's allegations support an inference that the Financial Statements were materially false as argued by the Plaintiff (Plaintiff's Response, pp. 12-13, citing Amended Complaint, ¶¶ 62-74, & 99), they do not offer a basis for the Plaintiff's reliance in connection with the execution of the Note on June 19, 2018.   As the Debtor asserts, the earliest alleged misrepresentation stated in the Amended Complaint was in reference to the June E-mail, with the Financial Statements attached, that was delivered after the loans evidenced by the Note were made and the Note was signed. Other alleged misrepresentations were similarly made later.[16]   Thus, the Plaintiff has not plausibly shown an entitlement to relief on this basis as to the Note.[17]   Similarly, regarding the Equity

---

[16] *See generally* Amended Complaint, ¶¶ 50-78.   Notwithstanding the Plaintiff's arguments that her allegations support an inference regarding the Debtor's alleged intent to deceive or purposefully conceal her use of Foundation's funds, coupled with allegations that the Plaintiff justifiably relied on her sister-in-law and their corresponding confidential relationship, this claim cannot succeed because the Plaintiff could not have relied on any statements that were made after the relevant actions were taken by the Plaintiff, which is an essential element of a viable claim for relief on the specific grounds asserted.

[17] In addition, the Court previously determined that the Note is not excepted from discharge as alleged in Counts IV or V.   Prior Order, p. 26.   Thus, the Debtor is not personally liable on the Note in any event.

Investment, the allegations are not sufficient to support the claim that the Plaintiff relied on the Financial Statements or other subsequent reports in making that investment in 2017.[18]

As to the Bank Loans and the Plaintiff's Guaranty, however, consistent with the discussion in the Prior Order (pp. 17-19), there appear to be factual disagreements between the parties concerning the Plaintiff's alleged reliance on the June E-mail and its attachments,[19] the Debtor's intent in sending the June E-mail in relation to the Plaintiff's Guaranty and the Bank Loans, the accuracy of the valuations provided,[20] and the Debtor's knowledge of any inaccuracies. *See* Amended Complaint, ¶¶ 48-78, 99, & 103.[21]  On a motion to dismiss, the Court does not resolve such disputes and accepts the truth of the Plaintiff's allegations.  Accordingly, the Plaintiff's factual assertions that she was fraudulently induced to enable Foundation to receive funds through her reliance on false representations regarding the financial health of Foundation in relation to the Bank Loans and the Plaintiff's Guaranty are sufficient to plead a basis for relief and withstand dismissal at this stage.

---

[18] As also previously noted, to the extent the Plaintiff asks the Court to render the Note "due in full" and to make the Debtor "liable for the full amount of the Equity Investment" (Prayer, Count IV), the Plaintiff offers no authority to support such a theory of recovery on the grounds alleged.  Prior Order, p. 20.  *Compare*, Prayer, Count I.

[19] *See* Amended Complaint, ¶ 76; Plaintiff's Response, p.16.

[20] *See* discussion of Valuation Discrepancies, Prior Order, pp. 8 & 18.

[21] The Plaintiff admits that the Bank Loans and the Guaranties were executed on July 23, 2018.  Although factual disputes are not resolved at this stage, on review of the Plaintiff's allegations, issues of timing will restrict which financial reports the Plaintiff may use to support her claim of fraudulent inducement as to the Plaintiff's Guaranty. *See* Amended Complaint, ¶ 51 (Plaintiff received August 2018 financials).  Similarly, allegations of other alleged misconduct (*i.e.* ¶ 101) are similarly restricted, as may be alleged promises to provide reports in the future.

Based on the foregoing, the Motion to Dismiss will be granted as to Count I as it pertains to the Note and the Equity Investment, but will be denied as to the Plaintiff's Guaranty of repayment of the Bank Loans under Count I.[22]

### B. *Count II (Breach of Fiduciary Duty)*

In Count II of the Amended Complaint, the Plaintiff alleges that as "the majority shareholder, chief [*sic*] executive officer, sole member and director of the Board of Foundation," the Debtor owed the Plaintiff a fiduciary duty "as the only other, and minority, shareholder" and as a creditor that she breached resulting in injury to the Plaintiff.   Amended Complaint, ¶¶ 109-114.   In support of these claims, the Plaintiff alleges that the Debtor provided financial information that misrepresented the value of Foundation's assets, paid herself and other family members instead of paying debts owed to the Plaintiff, removed assets from Foundation, prioritized payment of debts owed to herself and the Debtor's husband, and wired $127,000 of corporate funds to a third party.  *Id*., ¶¶ 113-19.   Based on these actions, the Plaintiff asks for judgment determining that (i) the Debtor is "liable for the amount loaned to Foundation under the Note," (ii) the Debtor is "liable for repayment the Bank Loans she induced Plaintiff to enter," and (iii) the Debtor is liable for "repayment of the $500,000 Plaintiff paid for her 33 1/3 interest in Foundation…."  *Id.*, ¶¶ 108-119 (incorporating ¶¶ 1-97).[23]

---

[22] As already noted, the Plaintiff has asserted a contribution obligation under Georgia law against the Debtor with respect to the Guaranties.   This contingent claim is not allowable against the estate under 11 U.S.C. § 502(e)(1)(B). Whether it is dischargeable as to the Debtor will have to await the resolution on the remainder of Count IV.   Prior Order, pp. 18-19, 25.

[23] The Court described certain other allegations of actions for which the Plaintiff claims harmed her as the "Misdeeds." *See* Prior Order, p. 9, referencing Amended Complaint, ¶¶ 79-97.

In response, the Debtor contends that any fiduciary duties she may have owed were owed to Foundation and its shareholders and creditors.   Since Foundation is itself a Chapter 7 debtor, the trustee of its bankruptcy estate holds the authority to bring an action or not for alleged breach of fiduciary duty as an asset of that bankruptcy estate.   *See Arwood v. Dunn (In re Caribbean K Line, Ltd.)*, 288 B.R. 908, 914 (Bankr. S.D. Fla. 2002).   Even if the Debtor's alleged wrongful acts "were directed solely towards Plaintiff, any actual harm caused by such wrongful actions would have been suffered by Foundation itself and its other parties in interest, especially its creditors since the company is insolvent."   Debtor's Brief, pp. 14-15.   As such, the Debtor insists that the Plaintiff lacks standing to assert a claim on her own behalf for breach of fiduciary duty and Count II therefore does not state a claim upon which relief can be granted.

The Plaintiff counters that *Arwood* does not hold a trustee has the exclusive right to bring such a suit, but that the trustee could bring the suit in that case.   In addition, the Plaintiff argues that a shareholder may be relieved of the requirement to bring a derivative suit to recover on a claim of misappropriation of corporate funds in two (2) situations.   First, an exception applies where a plaintiff shows that she suffered an injury "separate and distinct from the corporation" or that she was owed a "special duty" by the alleged wrongdoer.   Second, an exception is warranted when the reasons for applying the rule do not exist, as in the case of a closely held corporation. *See Hot Shot Kids Inc. v. Pervis (In re Pervis)*, 497 B.R. 612, 624-25 (Bankr. N.D. Ga. 2013), citing *Parks v. Multimedia Tech., Inc.*, 239 Ga.App. 282, 287, 294, 520 S.E.2d 517 (1999); *Barnett v. Fullard*, 306 Ga.App. 148, 154, 701 S.E.2d 608 (2010)(individual claim exists when duty owed to an individual is violated versus injury arising from harm to corporation); *Rosenfeld v. Rosenfeld*, 286 Ga.App. 61, 64(2), 648 S.E.2d 399 (2007)(citations omitted).

14

In *Arwood*, *supra*, the court upheld a trustee's standing to pursue an action for alleged breach of fiduciary duty on behalf of a debtor corporation because the duty in question "was owed simultaneously to both the insolvent corporation and the collective creditor body" as opposed to a "limited group within the creditor body…." 288 B.R. at 918. In addition, as stated above, an individual shareholder may bring a direct action as opposed to a derivation action in two (2) specified situations. *Rosenfeld, supra,* 286 Ga.App. 61, 64(2), 648 S.E.2d 399*; see also Thomas v. Dickson*, 250 Ga. 772, 774, 301 S.E.2d 49 (1983); *Knieper v. Wright*, 2018 WL 11350638, *5-*8 (N.D. Ga. Oct. 11, 2018). As to the first instance, where a direct action may be maintained (special injury to the individual), under Georgia law "'determination of whether a claim is derivative or direct is made by looking to what the pleader alleged'" and further "'[i]t is the nature of the wrong alleged and not the pleader's designation or stated intention that controls the court's decision.'" *Callicott v. Scott*, 357 Ga.App. 780, 786, 849 S.E.2d 547, 552 (2020), *reconsideration denied* (Nov. 17, 2020), *cert. denied* (June 21, 2021), quoting *Southwest Health & Wellness, LLC v. Work*, 282 Ga.App. 619, 624(2)(a), 639 S.E.2d 570 (2006)(citations and punctuation omitted); *see also Phoenix Airline Svcs. v. Metro Airlines,* 260 Ga. 584, 585-86(1), 397 S.E.2d 699 (1990).

In the second instance, seeking redress for an injury to a closely held corporation, the general rule requiring a shareholder to bring a derivative rather than direct action may also be excused if it is shown that the reasons for the general rule do not apply. *Callicott, supra*, 357 Ga.App. at 787–88, 849 S.E.2d at 553, citing *Southwest Health, supra*, 282 Ga.App. at 626(2)(c), 639 S.E.2d 570; *see also Pervis, supra*, 497 B.R. at 625 ("[o]ften, the reasons for proceeding derivatively are absent in close corporations"). As Georgia courts have stated:

> [T]he reasons for requiring derivative suits in the ordinary corporate context are
> (1) to prevent multiple suits by shareholders; (2) to protect corporate creditors by
> ensuring that the recovery goes to the corporation; (3) to protect the interest of all
> the shareholders by ensuring that the recovery goes to the corporation, rather than
> allowing recovery by one or a few shareholders to the prejudice of others; and
> (4) to adequately compensate injured shareholders by increasing their share values.

*Callicott, supra*, 357 Ga. App. at 787–88, 849 S.E.2d at 553, citing *Southwest Health, supra*, 282 Ga.App. at 626(2)(c), 639 S.E.2d 570.   Further, "[i]f at least one of these reasons for requiring a derivative suit applies, the plaintiff shareholder cannot maintain a direct action."   *Id*. citing *Southwest Health, supra*, 282 Ga.App. at 626-627, 639 S.E.2d 570.

Initially, accepting the allegations as true, it appears that at least some of the conduct and injuries described affected Foundation itself, and not just the Plaintiff individually.   More specifically, the Debtor's alleged diversion of corporate funds to pay disproportionately high salaries to family members, pay personal expenses, and reduce Foundation's ability to meet its obligations by removing assets affected Foundation.   Amended Complaint, ¶¶ 81, 85-87, & 115-18.   Even if those alleged wrongful acts were directed only toward the Plaintiff, any injury suffered by the Plaintiff would have been the same as an injury suffered by Foundation itself and would need to be brought in a derivative suit.   *Patel v. 2602 Deerfield, LLC*, 347 Ga.App. 880, 885-86, 819 S.E.2d 527, 533-34 (2018).

On further review, however, alleged efforts to frustrate the Plaintiff's ability to recover her investment or increase her exposure to personal liability appear individual in nature.   *See e.g. Knieper, supra*, 2018 WL 11350638, at *6-*7.   The fact that there are only two (2) shareholders involved in this matter also tends to support the Plaintiff's right to seek recovery for alleged breach of fiduciary duty.   *See In re Phillips*, 185 B.R. 121, 127 (Bankr. E.D. N.Y. 1995)(plaintiff suffered

16

direct injury in closely held corporation with two (2) fifty (50%) percent owners); *Mon Ami Int'l, Inc. v. Gale*, 264 Ga.App. 739, 743, 592 S.E.2d 83, 88 (2003)(derivative suit not required in case with two (2) owners).[24]

Similarly, as discussed in *Medkser v. Feingold*, 307 F. App'x 262, 265 (11th Cir. 2008),[25] although recovery for certain types of injuries would benefit other shareholders or the corporation itself, claims for intentional misrepresentations fraudulently inducing a plaintiff to invest her money may be asserted in a direct action. Those claims would not relate to an injury to the corporation, but to the specific investor for injuries allegedly sustained through her own reliance on fraudulent statements and misrepresentations made to her. *See also O'Neal Holdings, LP v. Bowden*, 2015 WL 5604363, at *2 (S.D. Ga. Sept. 22, 2015)(discussing *Medkser*, *supra*, and noting distinctions between types of injury and resulting harm in terms of whether derivative suit necessary). Based on the allegations herein, the Plaintiff has standing to pursue such claims in a direct action for injuries sustained individually through a corporate fiduciary in breaching her duties.

So based on the foregoing, it is legally possible for the Plaintiff to allege an individual claim in these circumstances. Under a Rule 12(b)(6) analysis, however, the Plaintiff has not alleged sufficient facts to support such a claim for those types of injuries in Count II with respect to the Note or the Equity Investment, since all of the alleged misconduct in Count II post-dated

---

[24] *See also Rosenfeld, supra,* 286 Ga.App. at 64, 648 S.E.2d 399; *Parks, supra*, 239 Ga.App. at 287, 520 S.E.2d 517 (cited in *Pervis, supra,* 497 B.R. at 624-25). As suggested by the Debtor, however, the interest in protecting corporate creditors with respect to any potential recovery disfavors allowance of a direct versus a derivative action. Debtor's Brief, p. 15, citing *Patel, supra,* 347 Ga.App. at 887, 819 S.E.2d 527.

[25] The court in *Medkser* looked to federal law and Florida state law finding no substantive difference. The test for derivative claims is also similar under Georgia law.

them.   A different conclusion obtains for the Plaintiff's Guaranty, however, because the issues of

timing, reliance, and accuracy remain plausible avenues for pursuing relief.

Based on the foregoing, the Motion to Dismiss will be granted as to Count II as it pertains

to the Note (in accordance with the preceding discussion concerning this obligation) and as to the

Equity Investment, but the Motion to Dismiss will be denied as to the Plaintiff's Guaranty.[26]

### C.   Count III (Breach of Duty of Loyalty)

In Count III of the Amended Complaint, the Plaintiff alleges that the Debtor breached the

duty of loyalty she owed to the Plaintiff as the "minority and sole additional shareholder of

Foundation."   *See* Amended Complaint, ¶¶ 121-129.   In support of these claims, the Plaintiff

alleges that the Debtor planned to "transfer business away from Foundation to a new entity,

Frontier Ambulance Solutions, LLC" ("Frontier"), arranged to close Foundation so that she could

continue its business, used designs and processes of Foundation in the new business, purchased

assets of Foundation, and cut the Plaintiff out of the business while leaving her with the burden of

its debts.   Based on these actions, the Plaintiff seeks judgment determining that the Debtor is

"liable for damages caused by her breach of duty of loyalty."   *Id.*, ¶¶ 120-129 (incorporating ¶¶

1-97).

In response, the Debtor again asserts that the Plaintiff lacks standing to bring this claim as

it belongs to Foundation and any action for recovery must be brought by its bankruptcy trustee.

---

[26] As noted in the Prior Order, however, even in regard to more "individual" type injuries, such as with respect to the
Plaintiff's Guaranty, the Plaintiff will need to identify the basis more specifically for any duty allegedly owed to a co-
guarantor to "facilitate collection" where (and to the extent) Foundation was still attempting to operate its business.
Prior Order, p. 22, n. 30; *see e.g.* Amended Complaint, ¶¶ 116-17.   To the extent the Plaintiff seeks to base liability
on an alleged 'inducement' to enter the Guaranty as stated in the prayer, the Plaintiff would need to show that such
action demonstrates a breach of fiduciary duty by the Debtor in her capacity as a corporate director and officer to a
shareholder.   *See e.g., Id.*, ¶ 114.

The Debtor further contends that, in any event, allegations of her intent to leave Foundation and join another company are not sufficient to state a claim for breach of the duty of loyalty or any other duty of a fiduciary nature.   Debtor's Brief, p. 15, n. 35, citing *Pervis, supra*, 497 B.R. at 638 (decision of officer to leave one company and start another does not constitute a violation of fiduciary duty if the officer does not solicit clients while still acting in that capacity).[27]   The Plaintiff counters that she has standing to bring these claims because the injuries resulting from the Debtor's alleged breach of the duty of loyalty "flow directly to her" especially as the minority shareholder who paid $500,000 for her interest when the Debtor paid nothing.   Plaintiff's Response, pp. 19-20, citing *Patel*, *supra*, 347 Ga.App. at 885, 819 S.E.2d at 532; *see also Parks, supra*, 239 Ga.App. at 289, 520 S.E.2d at 525.[28]

The degree of the Plaintiff's exposure to particularly significant financial injury by virtue of her singular relationship with Foundation and the Debtor, coupled with the allegation that she was singled out specifically for mistreatment and was the only other shareholder, appears sufficient to support her standing to bring a claim for alleged breach of the Debtor's duty of loyalty owed as an officer of Foundation.[29]   The allegations in the Amended Complaint regarding alleged

---

[27] *See also Keg Techs., v. Laimer*, 436 F.Supp.2d 1364, 1376-77 (N.D. Ga. 2006).

[28] As noted previously, the Plaintiff has not cited authority for requiring the Debtor to pay an amount to retain an interest in the business she already held when the Plaintiff made the Equity Investment.   Prior Order, p. 24.

[29] "It is settled law that corporate officers and directors occupy a fiduciary relationship to the corporation and its shareholders, and are held to the standard of utmost good faith and loyalty."   *Quinn v. Cardiovascular Physicians, P.C.*, 254 Ga. 216, 217, 326 S.E.2d 460, 463 (1985), citing *King Mfg. Co. v. Clay,* 216 Ga. 581, 118 S.E.2d 581 (1961); *see also* O.C.G.A. § 14-2-830 (General Standards for Directors).   This demand "extends to the rightful interests of minority shareholders" and their fair treatment based on the relative nature of their position with the corporate entity. *Quinn, supra*, 254 Ga.App. at 217-18, 326 S.E.2d at 463 (citation omitted), cited in *Knieper, supra*, 2018 WL 11350638 at *8.

withdrawal of corporate assets and beginning a similar business at Frontier, while continuing to draw compensation for an enterprise essentially funded by the Plaintiff, further support this conclusion.

As the Debtor asserted, allegations of "simply making plans" to begin a competing business by an officer are not generally sufficient to state a claim for breach of fiduciary duty or other duty of loyalty.[30]  Here, although there are no specific allegations of actively soliciting clients, it is alleged that following through on her plans, the Debtor made arrangements for such transition and that Frontier used Foundation's designs and processes in its business, announced on social media the transition had taken place, and continued the business operations developed by Foundation (Amended Complaint, ¶¶ 91-97, 124-26).   More than appropriation of a business opportunity of Foundation, the Debtor allegedly sought to appropriate the entire business itself in starting a new business venture without the Plaintiff through Frontier, while saddling the Plaintiff with Foundation's obligations that the Debtor had created (*Id.*, ¶ 128).[31]   Overall, these allegations and the unique nature of the Plaintiff's injuries appear sufficient under Rule 12(b)(6) to state a claim for relief for breach of the duty of loyalty.

Based on the foregoing, the allegations in Count III could support a right of recovery and the Motion to Dismiss will be denied as to Count III.

---

[30] *Pervis, supra*, 497 B.R. at 631, citing *Keg Techs, supra*, 436 F.Supp.2d at 1376.

[31] *See also Quinn, supra*, 254 Ga. at 219, 326 S.E.2d at 464 ("corporate actions which effect radical change—such as transfer of all assets, or liquidation—must be taken with scrupulous loyalty to the interests of minority shareholders.")

## IV.    <u>CONCLUSION</u>

In light of the foregoing discussion, it is

**ORDERED** that the Motion to Dismiss is **GRANTED** as to Count I to the extent that Count I is **DISMISSED** as it pertains to the claim of fraudulent inducement with respect to the Note and the Equity Investment.   And it is further

**ORDERED** that the Motion to Dismiss is **DENIED** as to Count I to the extent Count I relates to the claim of fraudulent inducement as to the Plaintiff's Guaranty.   And it is further

**ORDERED** that the Motion to Dismiss is **GRANTED** as to Count II to the extent that Count II is **DISMISSED** as it pertains to the claim of breach of fiduciary duty with respect to the Note and the Equity Investment.   And it is further

**ORDERED** that the Motion to Dismiss is **DENIED** as to Count II to the extent that Count II relates to the claim of breach of fiduciary duty regarding the Plaintiff's Guaranty.   And it is further

**ORDERED** that the Motion to Dismiss is **DENIED** as to Count III that pertains to a claim of breach of duty of loyalty; and it is further

**ORDERED** the portions of Counts I-III that remain will be liquidated (along with the surviving portion of POC No. 24 consolidated herewith) only for the purpose of determining any necessary distribution on those claims in the Chapter 7 case, because (except to the extent that the remaining Count I claims overlap with the surviving portion of Count IV) they are not included in any surviving nondischargeability Counts of the Amended Complaint and thus are subject to discharge in the underlying bankruptcy case.

21

Finally, in the Plaintiff's Response, the Plaintiff alternatively requests leave to amend the Amended Complaint.   Such relief is to be freely granted in most circumstances.   As discussed in the Prior Order (pp. 25-26), however, the Plaintiff had extensive time to file the Original Complaint and has already amended it once.   Leave to amend may be denied when an amendment would be futile.   *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004)(citations omitted)("'denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal'"). The Plaintiff has not described how any additional amended pleading would cure the deficiencies identified in the Amended Complaint.   In view of the duration of this matter the Court finds that additional leave to amend would not only be futile but would only create the possibility of further delay.   Any additional statements the Plaintiff may have regarding the relevant transactions or exchanges, in terms of timing or specificity, should have been put forward in the Amended Complaint. Thus, for these reasons and the reasons set forth in the Prior Order, the request for leave to amend the Amended Complaint is also **DENIED** as to Counts I-III.

The Clerk is directed to serve a copy of this Order upon the Plaintiff, counsel for the Plaintiff, the Defendant-Debtor, counsel for the Defendant-Debtor, the Chapter 7 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**